No. 24-60223

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

AT&T INC.,

*Petitioner,*

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents.*

On Petition for Review of an Order of
the Federal Communications Commission

## RESPONDENTS' PETITION FOR REHEARING EN BANC

D. Adam Candeub
*General Counsel*

Bradley Craigmyle
*Deputy General Counsel*

Jacob M. Lewis
*Associate General Counsel*

Sarah E. Citrin
*Deputy Associate General Counsel*

Adam L. Sorensen
*Counsel*

FEDERAL COMMUNICATIONS
COMMISSION
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

Abigail A. Slater
*Assistant Attorney General*

Robert B. Nicholson
Matthew A. Waring
*Attorneys*

U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave. NW
Washington, DC 20530

# CERTIFICATE OF INTERESTED PERSONS

No. 24-60223, *AT&T Inc. v. Federal Communications Commission and United States of America*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Petitioner**
AT&T Inc.

**Petitioner's Counsel**
Pratik A. Shah
Z.W. Julius Chen
Margaret O. Rusconi
AKIN GUMP STRAUSS HAUER & FELD LLP

**Respondents**
Federal Communications Commission
United States of America

**Respondents' Counsel**
D. Adam Candeub
Jacob M. Lewis
Sarah E. Citrin
James Michael Carr
Adam L. Sorensen
FEDERAL COMMUNICATIONS COMMISSION

Pamela Bondi
Abigail A. Slater
Robert J. Wiggers
Robert B. Nicholson
Matthew A. Waring
U.S. DEPARTMENT OF JUSTICE

Dated: July 16, 2025          /s/ *Adam L. Sorensen*

                             Adam L. Sorensen
                             Counsel
                             Federal Communications
                             Commission
                             Washington,    D.C.    20554

## STATEMENT REGARDING NECESSITY OF EN BANC REHEARING

The panel decision conflicts with prior decisions of this Court and the Supreme Court, and presents "questions of exceptional importance." FRAP R. 40(b)(2). Specifically, the panel's decision is contrary to this Court's decision in *Woods v. Holy Cross Hosp.*, 591 F.2d 1164, 1178–79 (5th Cir. 1979); and the Supreme Court's decisions in *Capital Traction Co. v. Hof*, 174 U.S. 1, 23 (1899), and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. ---, 2025 WL 1716136 (June 20, 2025).

The exceptionally important issues presented are:

1. Whether the Federal Communications Commission's statutory process for assessing a monetary forfeiture against AT&T, under which AT&T was entitled to a de novo jury trial in federal court, satisfies the Seventh Amendment.

2. Whether the Commission's enforcement proceeding against AT&T, a telecommunications carrier and wireless spectrum licensee, falls within the "public rights" exception to the Seventh Amendment.

3. Whether this Court should vacate the panel opinion because it relied upon *United States v. Stevens*, 691 F.3d 620 (5th Cir. 2012), which

has been effectively abrogated by *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. ---, 2025 WL 1716136 (June 20, 2025).

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS............................................i

STATEMENT REGARDING NECESSITY OF EN BANC
    REHEARING ..............................................................................iii

TABLE OF AUTHORITIES .......................................................vi

INTRODUCTION...........................................................................1

STATEMENT OF THE ISSUES .....................................................2

STATEMENT OF THE CASE..........................................................4

ARGUMENT ...................................................................................9

I.    THIS COURT SHOULD REHEAR THE PANEL'S
     DETERMINATION THAT THE COMMISSION'S
     STATUTORY ENFORCEMENT PROCESS IS
     UNCONSTITUTIONAL...........................................................9

    A.    The Availability Of A De Novo Jury Trial In Section
       503(b)(4) Forfeiture Proceedings Satisfies The Seventh
       Amendment ....................................................................9

    B.    The Panel Erroneously Held That The Forfeiture
       Proceeding Was Outside The Public Rights Exception
       To The Seventh Amendment ................................... 12

II.   THE PANEL OPINION SHOULD BE VACATED IN
     LIGHT OF *McLAUGHLIN* ....................................... 14

III.  THE CONSTITUTIONALITY OF THE COMMISSION'S
     AUTHORITY TO ASSESS MONETARY PENALTIES
     PRESENTS A QUESTION OF EXCEPTIONAL
     IMPORTANCE .......................................................... 18

CONCLUSION ...........................................................................21

CERTIFICATE OF COMPLIANCE.............................................22

STATUTORY ADDENDUM.....................................................23

# TABLE OF AUTHORITIES

**Cases**

*AT&T Corp. v. FCC,*
323 F.3d 1081 (D.C. Cir. 2003) ..................................................... 5

*Axalta Coating Sys. LLC v. FAA*, No. 23-2376,
2025 WL 1934352 (3d Cir. July 15, 2025) ........................................ 14

*Capital Traction Co. v. Hof,*
174 U.S. 1 (1899) ..................................................................... 10

*Carroll v. United States,*
721 F.2d 155 (5th Cir. 1983) ..................................................... 17

*Dougan v. FCC,*
21 F.3d 1488 (9th Cir. 1994) ..................................................... 12

*FTC v. Standard Oil Co. of Calif.,*
449 U.S. 232 (1980) ................................................................. 11

*Guevara v. Mar. Overseas Corp.,*
59 F.3d 1496 (5th Cir. 1995) ..................................................... 15

*Jarkesy v. SEC,*
803 F.3d 9 (D.C. Cir. 2015) ....................................................... 12

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,*
606 U.S. ---, 2025 WL 1716136 (June 20, 2025) ................ 3, 14, 16, 17

*Meeker v. Lehigh Valley R.R. Co.,*
236 U.S. 412 (1915) ................................................................. 10

*Pleasant Broad. Co. v. FCC,*
564 F.2d 496 (D.C. Cir. 1977) ................................................... 12

*Rivers v. Roadway Exp., Inc.,*
511 U.S. 298 (1994) ................................................................. 17

*SEC v. Jarkesy,*
603 U.S. 109 (2024) .......................................................... *passim*

*Seoane v. Ortho Pharms., Inc.*,
   660 F.2d 146 (5th Cir. 1981)..............................................11

*United States v. Hansen*,
   599 U.S. 762 (2023)....................................................17

*United States v. Lopez-Ortiz*,
   313 F.3d 225 (5th Cir. 2002)..........................................17

*United States v. Stevens*,
   691 F.3d 620 (5th Cir. 2012).....................................*passim*

*Woods v. Holy Cross Hosp.*,
   591 F.2d 1164 (5th Cir. 1979)..........................................11

## Constitution

U.S. Const. amend. VII ...................................................11

## Statutes

28 U.S.C. § 2342(1) .......................................................5

47 U.S.C. § 222...........................................................1

47 U.S.C. § 222(a) ........................................................4

47 U.S.C. § 222(c) ........................................................4

47 U.S.C. § 222(h)(1)(A)..................................................4

47 U.S.C. § 312(b) .......................................................19

47 U.S.C. § 401...........................................................19

47 U.S.C. § 402(a) ........................................................5

47 U.S.C. § 501...........................................................19

47 U.S.C. § 503(b)(1).....................................................4

47 U.S.C. § 503(b)(4)..................................................1, 5

47 U.S.C. § 504(a) ........................................................5, 9, 10

47 U.S.C. § 504(c)................................................................10

47 U.S.C. § 510 ....................................................................19

**Rules**

FRAP R. 40(b)(2)(D)............................................................18

**Regulations**

47 C.F.R. § 64.2010(a) ..........................................................4

**Administrative Materials**

*AT&T Inc.*, Notice of Apparent Liability,
    35 FCC Rcd 1743 (2020) ...............................................6

*In re AT&T, Inc.*, Forfeiture Order,
    39 FCC Rcd 4216 (2024) .............................................5, 6

**Legislative Materials**

Communications Act Amendments, 1960,
    H.R. Rep. No. 86-1800 (1960) .....................................20

**Other Materials**

Brief for Petitioner, *AT&T v. FCC*, No. 24-60223, No. Dkt. 30
    (July 29, 2024)...............................................................6

Brief for Respondents, *AT&T v. FCC*, No. 24-60223, No. Dkt. 45
    (Sept. 27, 2024)...........................................................13

CTIA, NCTA, Competitive Carriers Association, USTelecom, WIA
    Petition for Rulemaking (May 1, 2025)........................19

FCC, *Chairman Carr Highlights Wins Delivered During First 100
    Days* (Apr. 29, 2025)...................................................18

FCC, *First Commission-Level Vote Under Chairman Carr Proposes A Nearly $4.5 Million Fine Stemming From Apparently Illegal Robocall Scheme* (Feb. 4, 2025) ............................ 18

INCOMPAS, Letter, *Re: Advanced Methods to Target and Eliminate Unlawful Robocalls*, CG Docket No. 17-59 (May 6, 2025) ................................................................................. 19

Petition for Review, *AT&T v. FCC*, No. 24-60223, No. Dkt. 1-1 (May 9, 2024) ....................................................................... 6

No. 24-60223

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

AT&T INC.,

*Petitioner,*

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents.*

On Petition for Review of an Order of
the Federal Communications Commission

---

## INTRODUCTION

The panel's decision conflicts with the precedent of this Court and the Supreme Court, effectively holds unconstitutional an Act of Congress, and has far-reaching implications that could hamstring the government's ability to ensure compliance with the Communications Act.

After AT&T sold access to its wireless customers' location information without ensuring customer consent, in violation of 47 U.S.C. § 222, the Federal Communications Commission investigated and ultimately assessed a monetary forfeiture against the company under 47 U.S.C. § 503(b)(4).

On direct review, the panel held that the Commission's "in-house adjudication violated the Constitution by denying [AT&T] an Article III decisionmaker and a jury trial." Op. 1–2. That holding disregards the provision for a de novo jury trial under Section 504(a) of the Communications Act, contradicts this Court's and the Supreme Court's holdings that a de novo trial following an initial determination satisfies the Seventh Amendment, and does not faithfully apply the Seventh Amendment's public rights exception. What is more, in holding that AT&T's Seventh Amendment rights were violated, the panel relied heavily on Circuit precedent that has since been effectively abrogated by the Supreme Court.

This Court should grant rehearing *en banc*.

## STATEMENT OF THE ISSUES

1. Whether the Federal Communications Commission's statutory process for assessing a monetary forfeiture against AT&T, which included the availability of a de novo jury trial in federal court, satisfies the Seventh Amendment.

2. Whether the Commission's enforcement proceeding against AT&T, a telecommunications carrier and wireless spectrum licensee, falls within the "public rights" exception to the Seventh Amendment.

3.    Whether this Court should vacate the panel opinion because it relied upon *United States v. Stevens*, 691 F.3d 620 (5th Cir. 2012), which has been effectively abrogated by *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. ---, 2025 WL 1716136 (June 20, 2025).

## STATEMENT OF THE CASE

1.  Section 222 of the Communications Act imposes on every telecommunications carrier "a duty to protect the . . . proprietary information of" its "customers."  47 U.S.C. § 222(a).  One form of data protected by the statute is "customer proprietary network information," or CPNI, which includes "information that relates to the . . . location . . . of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship."  *Id.* § 222(c), (h)(1)(A).

Under the Commission's rules, "[t]elecommunications carriers must take reasonable measures to discover and protect against attempts to gain unauthorized access to CPNI."  47 C.F.R. § 64.2010(a).

2.  Section 503 of the Communications Act provides that "any person who willfully or repeatedly fail[s] to comply with" any provision of the Act or the Commission's rules "shall be liable to the United States for a [monetary] forfeiture penalty."  47 U.S.C. § 503(b)(1).

Under § 503(b)(4), the Commission may assess a penalty in a written forfeiture order after first issuing a notice of apparent liability

and allowing the apparent violator to respond in writing.  If the apparent violator declines to pay, the forfeiture "shall be recoverable pursuant to section 504(a)," *id.* § 503(b)(4), which requires the government to bring "a civil suit in the name of the United States" in district court and provides that "any [such] suit . . . shall be a trial de novo," *id.* § 504(a).  An aggrieved party may forgo such a trial court proceeding by paying the forfeiture and seeking review in a court of appeals under 47 U.S.C. § 402(a) and 28 U.S.C. § 2342(1).  *See AT&T Corp. v. FCC*, 323 F.3d 1081, 1084 (D.C. Cir. 2003).

3.  Until March 2019, AT&T ran a "location-based services program" that sold access to its wireless customers' location data to various third parties.  *In re AT&T, Inc.*, Forfeiture Order, 39 FCC Rcd 4216, 4219 at ¶8 (2024) ("Order").  AT&T eventually shut down this program after the *New York Times* revealed serious vulnerabilities that allowed malicious actors to track the location of any AT&T customer without authorization or consent.  Order ¶14.

On February 28, 2020, the Commission proposed a $57,265,625 forfeiture for AT&T's apparent violations of Section 222 of the Communications Act and Section 64.2010 of the Commission's rules.  *See*

*AT&T Inc.*, Notice of Apparent Liability, 35 FCC Rcd 1743 (2020) ("Notice"). After considering AT&T's responses, the Commission found that AT&T repeatedly "disclos[ed] its customers' location information, without their consent, to a third party who was not authorized to receive it," and penalized AT&T for "continu[ing] to sell access to its customers' location information under (for all intents and purposes) the *same system*" for nearly a year after these serious vulnerabilities became public. Order ¶1, ¶44.

4.  AT&T did not wait for the government to bring suit to recover the forfeiture under Section 504(a), which would have provided for a de novo jury trial in district court. Instead, it paid the forfeiture and sought direct review in this Court. *See AT&T v. FCC*, No. 24-60223, No. Dkt. 1-1 (May 9, 2024).

On appeal, AT&T raised numerous issues, including statutory objections to the Commission's authority to regulate location data, its provision of fair notice, and its forfeiture calculation. *See AT&T v. FCC*, No. 24-60223, No. Dkt. 30 (July 29, 2024) ("AT&T Br."). AT&T also argued, relying on *SEC v. Jarkesy*, 603 U.S. 109 (2024), that "the

Commission's adjudication of common law private rights violates the Seventh Amendment." AT&T Br. 29.

5. On April 17, 2025, a panel of this Court vacated the forfeiture order, concluding that "the [Commission's] in-house adjudication violated the Constitution by denying [AT&T] an Article III decisionmaker and a jury trial." Op. 1–2. The panel declined to "reach the other issues AT&T raise[d]." Op. 8. Judge Duncan authored the opinion, which was joined by Judge Wilson. Judge Haynes concurred in the judgment only.

The panel first concluded that the "the Commission's enforcement proceeding qualifies as a 'suit at common law,'" subject to the Seventh Amendment. Op. 9. It next concluded that the AT&T forfeiture proceeding did not fall within the "public rights" exception to the Seventh Amendment, which permits Congress to channel adjudication of certain matters "to agencies instead of courts." Op. 13. Because private negligence suits against common carriers "have been routinely adjudicated in state and federal courts," the panel thought "it would be bizarre to situate a negligence action against carriers within the 'historic categories of adjudications' falling outside Article III." Op. 15. While the panel acknowledged "that federal agencies like the Commission have

long had regulatory authority over common carriers," it nonetheless concluded that the public rights exception did not apply. *See* Op. 16 & n.12.

Finally, the panel rejected the Commission's lead argument that the Seventh Amendment was satisfied by the availability of a de novo jury trial under Section 504(a). Op. 18. By the time such a jury trial took place, the panel wrote, "the Commission would have already adjudged a carrier guilty of violating section 222 and levied fines," leading to "real-world impacts," such as "reputational harm" from bad publicity, and unspecified pre-trial "risks." Op. 18–19. The panel also concluded that the Court's prior decision in *United States v. Stevens*, 691 F.3d 620 (5th Cir. 2012)—which prohibited "a defendant [from] challeng[ing] a forfeiture order's legal conclusions" in trial court—created a Seventh Amendment problem by forcing AT&T to choose between giving up its legal arguments in district court and making those arguments in the court of appeals without a jury trial. Op. 19–20.

**ARGUMENT**

## I. THIS COURT SHOULD REHEAR THE PANEL'S DETERMINATION THAT THE COMMISSION'S STATUTORY ENFORCEMENT PROCESS IS UNCONSTITUTIONAL

### A. The Availability Of A De Novo Jury Trial In Section 503(b)(4) Forfeiture Proceedings Satisfies The Seventh Amendment

1. The panel's decision fails to account for the availability of a de novo jury trial in Section 503(b)(4) forfeiture proceedings, and it conflicts with decisions of this Court and the Supreme Court holding that the Seventh Amendment can be satisfied by a jury trial following an initial determination by another tribunal. The availability of a de novo jury trial should have resolved AT&T's Seventh Amendment objections, and rehearing *en banc* is warranted.

The panel was concerned that, before any jury trial, "the Commission would have already adjudged a carrier guilty of violating section 222 and levied fines." Op. 18. But that misses the relevant Seventh Amendment question: whether a defendant in Commission enforcement proceedings can obtain a jury trial before the government imposes an obligation to pay a monetary penalty. The answer here is yes. *See* 47 U.S.C. § 504(a). The Commission's initial determination that AT&T violated the statute and should pay a penalty does not change that.

Indeed, the Commission cannot recover a monetary forfeiture or use the existence of a forfeiture proceeding to a party's prejudice unless a court—after the opportunity for a de novo trial—has ordered payment (or the forfeiture is voluntarily paid). *Id.* § 504(a), (c).

The Supreme Court has long recognized that the availability of a jury trial satisfies the Seventh Amendment even when the trial follows an initial determination by a different tribunal. The Seventh Amendment "does not prescribe at what stage of an action a trial by jury must, if demanded, be had, or what conditions may be imposed upon the demand of such a trial, consistently with preserving the right to it." *Capital Traction Co. v. Hof*, 174 U.S. 1, 23 (1899). For example, in *Capital Traction*, the Supreme Court held that an initial liability determination by a justice of the peace was consistent with the Seventh Amendment so long as a subsequent "trial [anew] by jury" was available. *Id.* at 4, 37–39, 45–46; *see also Meeker v. Lehigh Valley R.R. Co.*, 236 U.S. 412, 430 (1915) (statutory scheme in which the Interstate Commerce Commission awarded damages to shippers, who could then recover the damages in a civil suit where the agency's findings were treated as evidence but were not conclusive, "does not abridge the right of trial by jury"). Similarly, this Court has upheld liability findings by medical

liability mediation panels as a precondition to a jury trial because the Seventh Amendment requires "only that the jury [u]ltimately determine the issues of fact if they cannot be settled by the parties or determined as a matter of law." *Woods v. Holy Cross Hosp.*, 591 F.2d 1164, 1178–79 (5th Cir. 1979); *see also Seoane v. Ortho Pharms., Inc.*, 660 F.2d 146, 149 (5th Cir. 1981). The panel's decision contradicts binding precedent that holds the availability of a de novo jury trial, provided in this case under Section 504(a), satisfies the Seventh Amendment.

The panel's concerns about "reputational harm" or unnamed "risks" while parties await trial, Op. 18–19, are misplaced. Because the Seventh Amendment concerns only "[s]uits at common law, where the value in controversy shall exceed twenty dollars," it is only implicated by proceedings that result in monetary penalties. U.S. Const. amend. VII. If the Commission had issued AT&T a cease and desist order rather than a monetary penalty premised on an agency finding of statutory violations, the same "reputational harm" could occur, but the Seventh Amendment would not come into play.

To be sure, in the proceeding before the Commission, AT&T may have incurred "the expense and disruption of defending itself." *FTC v. Standard Oil Co. of Calif.*, 449 U.S. 232, 244 (1980) (internal quotation

marks omitted). But "the expense and annoyance of litigation is part of the social burden of living under government." *Ibid.* And such practical (rather than legal) consequences are merely "the burdens abided by any respondent in an enforcement proceeding or any criminal defendant who must wait for vindication." *Jarkesy v. SEC*, 803 F.3d 9, 28 (D.C. Cir. 2015). Even then, a carrier facing "demonstrably adverse consequences" pending a trial court proceeding could, if necessary, bring a declaratory action to address the forfeiture order. *See Pleasant Broad. Co. v. FCC*, 564 F.2d 496, 502 (D.C. Cir. 1977); *see also Dougan v. FCC*, 21 F.3d 1488 (9th Cir. 1994) (approving *Pleasant Broadcasting*).

### B. The Panel Erroneously Held That The Forfeiture Proceeding Was Outside The Public Rights Exception To The Seventh Amendment

Because Section 504(a) entitled AT&T to a de novo jury trial before any legal obligation to pay the forfeiture would arise, AT&T's Seventh Amendment challenge lacks merit. But even if the statute did not confer a jury trial right, the scheme would be constitutional based on the public rights exception to the Seventh Amendment.

Under that exception, "Congress may assign [a] matter for decision to an agency without a jury, consistent with the Seventh Amendment." *Jarkesy*, 603 U.S. at 127. Oversight of telecommunications providers like

AT&T is doubly imbued with a public character because such companies are both common carriers and licensees of federally managed spectrum. *See AT&T v. FCC*, No. 24-60223, No. Dkt. 45, at 30–35 (Sept. 27, 2024). Indeed, the panel's acknowledgment that the public rights exception may apply to certain Commission matters "such as when setting rates or granting licenses," Op. 16, supports the government's position. AT&T is a spectrum licensee subject to the standard license term that it must follow Commission rules, including those relating to protecting customer data. Not only did the panel fail to address AT&T's role as a spectrum licensee, but under the panel's own reasoning, the exception should apply to enforcement actions, like this one, against licensees that violate the terms of their licenses to use spectrum, a public resource. *See Jarkesy*, 603 U.S. at 130 (recognizing "historical categories of adjudications [that] fall within the exception," including "the granting of public benefits").

The other aspects of the panel's public rights analysis were equally flawed. For example, it is irrelevant that private suits against common carriers are commonly adjudicated in court. Op. 15 & n.10. The public rights exception applies to matters specifically assigned to agency oversight. *See Jarkesy*, 603 U.S. at 130. Here, the statutory proprietary data protections are "technical prescriptions for engaging in . . .

regulated activity" that were "unknown to the common law." *Cf. Axalta Coating Sys. LLC v. FAA*, No. 23-2376, 2025 WL 1934352, at *5 (3d Cir. July 15, 2025) (rejecting under the public rights exception a Seventh Amendment challenge to an FAA civil penalty for improperly shipping a can of paint). They are not, as the panel concluded, "closely analogous to a negligence action." Op. 12; *see Axalta Coating Sys.*, 2025 WL 1934352, at *5 (rejecting analogy to common law negligence). The fact that a similar claim *can* be litigated between private parties in court does not imply that all such claims *must* be litigated in court. By definition, the public rights exception covers matters "'determined exclusively by [the executive and legislative] branches,' even when they were 'presented in such form that the judicial power is capable of acting on them.'" *Jarkesy*, 603 U.S. at 128.

## II. THE PANEL OPINION SHOULD BE VACATED IN LIGHT OF *McLAUGHLIN*

In dismissing the significance of a Section 504(a) de novo jury trial, the panel relied on the Fifth Circuit's prior decision in *Stevens*, 691 F.3d 620, *see* Op. 19–20. Because that decision is irreconcilable with *McLaughlin*, 606 U.S. __, 2025 WL 1716136, rehearing *en banc* should be granted and the panel opinion should be vacated. *See, e.g., Guevara v.*

*Mar. Overseas Corp.*, 59 F.3d 1496, 1507 (5th Cir. 1995) (rehearing case *en banc* where intervening Supreme Court precedent "effectively overruled" circuit precedent that bound panel).

*Stevens* read the Hobbs Act, 28 U.S.C. § 2342(1), to preclude a defendant in an FCC enforcement trial from challenging the legal validity of the underlying forfeiture order, thus limiting the trial court "'to considering the factual basis for the agency action' but not [a defendant's] 'legal arguments,'" such as proper interpretation of the Communications Act.  Op. 19 (quoting *Stevens*, 691 F.3d at 622).  *Stevens* reached that conclusion even though the plain text of Section 504(a) guarantees a "trial de novo" without limiting the arguments a defendant may raise.  Under the established interpretative rule that a specific statute controls over a general one, Section 504(a) would allow AT&T to challenge the underlying forfeiture order in the district court proceedings, even if the Hobbs Act generally applied to Commission enforcement actions.  According to the panel here, *Stevens*'s rule unconstitutionally forced AT&T to choose between a jury trial without the "ability to challenge the order's legality" on the one hand, and appellate review (without a jury trial) on the other.  Op. 20; *see also* Op. 19 (calling this a "glaring problem").

*Stevens* is no longer good law. *McLaughlin* holds that "[i]n an enforcement proceeding, a district court must independently determine . . . whether the agency's interpretation of a statute is correct," as well as "whether the rule or order was arbitrary and capricious under the APA or otherwise was unlawful." 2025 WL 1716136, at *6 & n.2.[1] That decision effectively abrogates *Stevens*. *Compare McLaughlin*, 2025 WL 1716136, at *4 ("The Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation . . . is correct"), *with Stevens*, 691 F.3d at 622 (allowing consideration of "factual defenses" but not "legal validity"). *McLauglin* confirms that a Section 504(a) "trial de novo" does not require a penalized party to choose between raising factual and legal issues; there is no longer any force to the panel's suggestion, Op. 19, that AT&T would not be able to challenge the legal validity of a forfeiture order in a Section 504(a) action.

---

[1]     *McLaughlin* was a lawsuit between two private parties, but the Court made clear that its holding applied to both private litigation to enforce agency rules and "enforcement actions brought by the Government." *McLaughlin*, 2025 WL 1716136, at *5 n.1.

AT&T may argue that a Seventh Amendment problem remains because *Stevens* was the law of this circuit at the time of the forfeiture order in 2020 and that AT&T had to petition for Hobbs Act review lest the government bring its Section 504(a) in the Fifth Circuit. That argument fails. When the Supreme Court "construes a statute" like the Hobbs Act, it explains what the statute "ha[s] *always* meant." *See, e.g.*, *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 n.12 (1994); *accord, e.g.*, *United States v. Lopez-Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002). Thus, even before *McLaughlin*, the Hobbs Act was no bar to AT&T's raising legal issues in a jury trial under Section 504(a)—including in this circuit.

Even if any ambiguity remained, this Court should not "manufacture" a constitutional conflict with Section 504(a) by continuing to follow the rule announced in *Stevens*. *United States v. Hansen*, 599 U.S. 762, 781 (2023). At minimum, the Court should grant panel rehearing and conduct further proceedings in light of *McLaughlin*. *See, e.g., Carroll v. United States*, 721 F.2d 155, 156 (5th Cir. 1983) (treating en banc rehearing petition as panel rehearing petition and granting rehearing in light of intervening Supreme court precedent).

## III. THE CONSTITUTIONALITY OF THE COMMISSION'S AUTHORITY TO ASSESS MONETARY PENALTIES PRESENTS A QUESTION OF EXCEPTIONAL IMPORTANCE

Rehearing *en banc* is also warranted because the panel decision involves "questions of exceptional importance." FRAP R. 40(b)(2)(D).

Civil penalties are among the Commission's most important regulatory remedies. Monetary forfeiture orders have constituted a substantial portion of the Commission's enforcement efforts in recent years, imposed not only on violators of the Commission's privacy rules, but also, for example, on companies that have flouted robocalling and unlicensed broadcasting rules. Such forfeitures remain "a top priority at the FCC,"[2] an area of bipartisan agreement, and have been celebrated as among the "key wins" in recent months.[3]

Although AT&T's challenge arose in a specific factual context, the panel's logic seems to widely question Section 503(b)(4)'s

---

[2] FCC, *First Commission-Level Vote Under Chairman Carr Proposes A Nearly $4.5 Million Fine Stemming From Apparently Illegal Robocall Scheme* (Feb. 4, 2025) (available at https://docs.fcc.gov/public/attachments/DOC-409354A1.pdf).

[3] FCC, *Chairman Carr Highlights Wins Delivered During First 100 Days* 3 (Apr. 29, 2025) (available at https://docs.fcc.gov/public/attachments/DOC-411127A1.pdf).

constitutionality in all (or nearly all) of its applications. If the panel's decision stands, the validity of every Commission enforcement action that seeks to impose a monetary penalty under that provision is likely to be challenged. Indeed, since the panel's decision, trade groups have argued that "*Jarkesy* renders the Commission's current enforcement process unconstitutional."[4] And one party has asked the Commission to "curtail its forfeiture proceedings" enforcing robocalling rules.[5]

Other nonmonetary remedies remain at the Commission's disposal—including seizure of radio equipment, cease and desist orders, and injunctive relief, *see*, *e.g.*, 47 U.S.C. §§ 312(b), 401, 501, 510. But those remedies are significantly less flexible (and less frequently used) than monetary penalties. And unlike some other agencies, *e.g.*, *Jarkesy*, 603 U.S. at 116, the FCC cannot independently initiate enforcement actions seeking monetary remedies in district court.

---

[4] CTIA, NCTA, Competitive Carriers Association, USTelecom, WIA Petition for Rulemaking at 2 (May 1, 2025) (available at https://www.fcc.gov/ecfs/document/10501450301035/1).

[5] INCOMPAS, Letter, *Re: Advanced Methods to Target and Eliminate Unlawful Robocalls*, CG Docket No. 17-59 (May 6, 2025) (available at https://www.fcc.gov/ecfs/document/105060027810913/1).

Congress granted the Commission forfeiture authority after the agency expressed its view that "the power to impose monetary forfeitures" would provide the agency "with an effective tool in dealing with violations in situations where" more draconian remedies, such as "revocation or suspension [of licenses,] do[es] not appear to be appropriate." Communications Act Amendments, 1960, H.R. Rep. No. 86-1800, at 17 (1960). Depriving the Commission of the flexibility to assess monetary forfeitures for regulatory violations would necessarily relegate the agency to an increased reliance on license revocation or nonrenewal for regulatory violations—severe, all-or-nothing penalties that would affect regulated parties far more substantially than targeted fines.

The exceptional importance of the Commission's monetary forfeiture authority thus warrants rehearing *en banc*.

# CONCLUSION

The petition for rehearing *en banc* should be granted.

Dated: July 16, 2025

Respectfully submitted,

/s/ *Adam L. Sorensen*

D. Adam Candeub
   *General Counsel*

Bradley Craigmyle
   *Deputy General Counsel*

Jacob M. Lewis
   *Associate General Counsel*

Sarah E. Citrin
   *Deputy Associate General Counsel*

Abigail A. Slater
   *Assistant Attorney General*

Adam L. Sorensen
   *Counsel*

Robert B. Nicholson
Matthew A. Waring
   *Attorneys*

FEDERAL COMMUNICATIONS
   COMMISSION

U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave. NW
Washington, DC 20530

45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

*Counsel for Respondent
   United States of America*

*Counsel for Respondent Federal
   Communications Commission*

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This document complies with the type-volume limit of Fed. R. App. P. 40(d) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒   this document contains <u>3,821</u> words, *or*

    ☐   this document uses a monospaced typeface and contains <u>    </u> lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒   this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word for Office 365</u> in <u>14-point Century Schoolbook</u>, *or*

    ☐   this document has been prepared in a monospaced spaced typeface using <u>       </u> with <u>       </u>.

*/s/  Adam L. Sorensen*
Adam L. Sorensen
*Counsel for Respondents*

**STATUTORY ADDENDUM**

# STATUTORY ADDENDUM CONTENTS

**Page**

47 U.S.C. § 222..................................................................... Add. 2

47 U.S.C. § 503..................................................................... Add. 7

47 U.S.C. § 504................................................................... Add. 13

47 U.S.C. § 222 provides:

## § 222. Privacy of customer information

### (a) In general

Every telecommunications carrier has a duty to protect the confidentiality of proprietary information of, and relating to, other telecommunication carriers, equipment manufacturers, and customers, including telecommunication carriers reselling telecommunications services provided by a telecommunications carrier.

### (b) Confidentiality of carrier information

A telecommunications carrier that receives or obtains proprietary information from another carrier for purposes of providing any telecommunications service shall use such information only for such purpose, and shall not use such information for its own marketing efforts.

### (c) Confidentiality of customer proprietary network information

#### (1) Privacy requirements for telecommunications carriers

Except as required by law or with the approval of the customer, a telecommunications carrier that receives or obtains customer proprietary network information by virtue of its provision of a telecommunications service shall only use, disclose, or permit access to individually identifiable customer proprietary network information in its provision of (A) the telecommunications service from which such information is derived, or (B) services necessary to, or used in, the provision of such telecommunications service, including the publishing of directories.

#### (2) Disclosure on request by customers

A telecommunications carrier shall disclose customer proprietary network information, upon affirmative written request by the customer, to any person designated by the customer.

**(3) Aggregate customer information**

A telecommunications carrier that receives or obtains customer proprietary network information by virtue of its provision of a telecommunications service may use, disclose, or permit access to aggregate customer information other than for the purposes described in paragraph (1). A local exchange carrier may use, disclose, or permit access to aggregate customer information other than for purposes described in paragraph (1) only if it provides such aggregate information to other carriers or persons on reasonable and nondiscriminatory terms and conditions upon reasonable request therefor.

**(d) Exceptions**

Nothing in this section prohibits a telecommunications carrier from using, disclosing, or permitting access to customer proprietary network information obtained from its customers, either directly or indirectly through its agents--

(1) to initiate, render, bill, and collect for telecommunications services;

(2) to protect the rights or property of the carrier, or to protect users of those services and other carriers from fraudulent, abusive, or unlawful use of, or subscription to, such services;

(3) to provide any inbound telemarketing, referral, or administrative services to the customer for the duration of the call, if such call was initiated by the customer and the customer approves of the use of such information to provide such service; and

(4) to provide call location information concerning the user of a commercial mobile service (as such term is defined in section 332(d) of this title) or the user of an IP-enabled voice service (as such term is defined in section 615b of this title)--

(A) to a public safety answering point, emergency medical service provider or emergency dispatch provider, public safety, fire service, or law enforcement official, or hospital emergency or trauma care facility, in order to respond to the user's call for emergency services;

(B) to inform the user's legal guardian or members of the user's immediate family of the user's location in an emergency situation that involves the risk of death or serious physical harm; or

(C) to providers of information or database management services solely for purposes of assisting in the delivery of emergency services in response to an emergency.

## (e) Subscriber list information

Notwithstanding subsections (b), (c), and (d), a telecommunications carrier that provides telephone exchange service shall provide subscriber list information gathered in its capacity as a provider of such service on a timely and unbundled basis, under nondiscriminatory and reasonable rates, terms, and conditions, to any person upon request for the purpose of publishing directories in any format.

## (f) Authority to use location information

For purposes of subsection (c)(1), without the express prior authorization of the customer, a customer shall not be considered to have approved the use or disclosure of or access to--

(1) call location information concerning the user of a commercial mobile service (as such term is defined in section 332(d) of this title) or the user of an IP-enabled voice service (as such term is defined in section 615b of this title), other than in accordance with subsection (d)(4); or

(2) automatic crash notification information to any person other than for use in the operation of an automatic crash notification system.

**(g) Subscriber listed and unlisted information for emergency services**

Notwithstanding subsections (b), (c), and (d), a telecommunications carrier that provides telephone exchange service or a provider of IP-enabled voice service (as such term is defined in section 615b of this title) shall provide information described in subsection (i)(3)(A)1 (including information pertaining to subscribers whose information is unlisted or unpublished) that is in its possession or control (including information pertaining to subscribers of other carriers) on a timely and unbundled basis, under nondiscriminatory and reasonable rates, terms, and conditions to providers of emergency services, and providers of emergency support services, solely for purposes of delivering or assisting in the delivery of emergency services.

**(h) Definitions**

As used in this section:

**(1) Customer proprietary network information**

The term "customer proprietary network information" means—

(A) information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship; and

(B) information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier;

except that such term does not include subscriber list information.

**(2) Aggregate information**

The term "aggregate customer information" means collective data that relates to a group or category of services or customers, from which individual customer identities and characteristics have been removed.

**(3) Subscriber list information**

The term "subscriber list information" means any information—

(A) identifying the listed names of subscribers of a carrier and such subscribers' telephone numbers, addresses, or primary advertising classifications (as such classifications are assigned at the time of the establishment of such service), or any combination of such listed names, numbers, addresses, or classifications; and

(B) that the carrier or an affiliate has published, caused to be published, or accepted for publication in any directory format.

**(4) Public safety answering point**

The term "public safety answering point" means a facility that has been designated to receive emergency calls and route them to emergency service personnel.

**(5) Emergency services**

The term "emergency services" means 9-1-1 emergency services and emergency notification services.

**(6) Emergency notification services**

The term "emergency notification services" means services that notify the public of an emergency.

**(7) Emergency support services**

The term "emergency support services" means information or data base management services used in support of emergency services.

47 U.S.C. § 503 provides:

## § 503. Forfeitures

### (a) Rebates and offsets

Any person who shall deliver messages for interstate or foreign transmission to any carrier, or for whom as sender or receiver, any such carrier shall transmit any interstate or foreign wire or radio communication, who shall knowingly by employee, agent, officer, or otherwise, directly or indirectly, by or through any means or device whatsoever, receive or accept from such common carrier any sum of money or any other valuable consideration as a rebate or offset against the regular charges for transmission of such messages as fixed by the schedules of charges provided for in this chapter, shall in addition to any other penalty provided by this chapter forfeit to the United States a sum of money three times the amount of money so received or accepted and three times the value of any other consideration so received or accepted, to be ascertained by the trial court; and in the trial of said action all such rebates or other considerations so received or accepted for a period of six years prior to the commencement of the action, may be included therein, and the amount recovered shall be three times the total amount of money, or three times the total value of such consideration, so received or accepted, or both, as the case may be.

### (b) Activities constituting violations authorizing imposition of forfeiture penalty; amount of penalty; procedures applicable; persons subject to penalty; liability exemption period

**(1)** Any person who is determined by the Commission, in accordance with paragraph (3) or (4) of this subsection, to have--

> **(A)** willfully or repeatedly failed to comply substantially with the terms and conditions of any license, permit, certificate, or other instrument or authorization issued by the Commission;

**(B)** willfully or repeatedly failed to comply with any of the provisions of this chapter or of any rule, regulation, or order issued by the Commission under this chapter or under any treaty, convention, or other agreement to which the United States is a party and which is binding upon the United States;

**(C)** violated any provision of section 317(c) or 509(a) of this title; or

**(D)** violated any provision of section 1304, 1343, 1464, or 2252 of Title 18;

shall be liable to the United States for a forfeiture penalty. A forfeiture penalty under this subsection shall be in addition to any other penalty provided for by this chapter; except that this subsection shall not apply to any conduct which is subject to forfeiture under subchapter II, part II or III of subchapter III, or section 507 of this title.

**(2)(A)** If the violator is (i) a broadcast station licensee or permittee, (ii) a cable television operator, or (iii) an applicant for any broadcast or cable television operator license, permit, certificate, or other instrument or authorization issued by the Commission, the amount of any forfeiture penalty determined under this section shall not exceed $25,000 for each violation or each day of a continuing violation, except that the amount assessed for any continuing violation shall not exceed a total of $250,000 for any single act or failure to act described in paragraph (1) of this subsection.

**(B)** If the violator is a common carrier subject to the provisions of this chapter or an applicant for any common carrier license, permit, certificate, or other instrument of authorization issued by the Commission, the amount of any forfeiture penalty determined under this subsection shall not exceed $100,000 for each violation or each day of a continuing violation, except that the amount assessed for any continuing violation shall not exceed a total of $1,000,000 for any single act or failure to act described in paragraph (1) of this subsection.

**(C)** Notwithstanding subparagraph (A), if the violator is—

**(i)(I)** a broadcast station licensee or permittee; or

**(II)** an applicant for any broadcast license, permit, certificate, or other instrument or authorization issued by the Commission; and

**(ii)** determined by the Commission under paragraph (1) to have broadcast obscene, indecent, or profane language,1 the amount of any forfeiture penalty determined under this subsection shall not exceed $325,000 for each violation or each day of a continuing violation, except that the amount assessed for any continuing violation shall not exceed a total of $3,000,000 for any single act or failure to act.

**(D)** In any case not covered in subparagraph (A), (B), or (C), the amount of any forfeiture penalty determined under this subsection shall not exceed $10,000 for each violation or each day of a continuing violation, except that the amount assessed for any continuing violation shall not exceed a total of $75,000 for any single act or failure to act described in paragraph (1) of this subsection.

**(E)** The amount of such forfeiture penalty shall be assessed by the Commission, or its designee, by written notice. In determining the amount of such a forfeiture penalty, the Commission or its designee shall take into account the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require.

**(F)** Subject to paragraph (5) of this section, if the violator is a manufacturer or service provider subject to the requirements of section 255, 617, or 619 of this title, and is determined by the Commission to have violated any such requirement, the manufacturer or provider shall be liable to the United States for a forfeiture penalty of not more than $100,000 for each violation or each day of a continuing violation, except that the amount assessed for any continuing violation shall not exceed a total of $1,000,000 for any single act or failure to act.

**(3)(A)** At the discretion of the Commission, a forfeiture penalty may be determined against a person under this subsection after notice and an opportunity for a hearing before the Commission or an administrative law judge thereof in accordance with section 554 of Title 5. Any person against whom a forfeiture penalty is determined under this paragraph may obtain review thereof pursuant to section 402(a) of this title.

**(B)** If any person fails to pay an assessment of a forfeiture penalty determined under subparagraph (A) of this paragraph, after it has become a final and unappealable order or after the appropriate court has entered final judgment in favor of the Commission, the Commission shall refer the matter to the Attorney General of the United States, who shall recover the amount assessed in any appropriate district court of the United States. In such action, the validity and appropriateness of the final order imposing the forfeiture penalty shall not be subject to review.

**(4)** Except as provided in paragraph (3) of this subsection, no forfeiture penalty shall be imposed under this subsection against any person unless and until--

> **(A)** the Commission issues a notice of apparent liability, in writing, with respect to such person;

> **(B)** such notice has been received by such person, or until the Commission has sent such notice to the last known address of such person, by registered or certified mail; and

> **(C)** such person is granted an opportunity to show, in writing, within such reasonable period of time as the Commission prescribes by rule or regulation, why no such forfeiture penalty should be imposed.

Such a notice shall (i) identify each specific provision, term, and condition of any Act, rule, regulation, order, treaty, convention, or other agreement, license, permit, certificate, instrument, or authorization which such person apparently violated or with which such person apparently failed to comply; (ii) set forth the nature of the act or omission charged against such person and the facts upon which such charge is based; and (iii) state the date on which such conduct occurred. Any forfeiture penalty determined under this paragraph shall be recoverable pursuant to section 504(a) of this title.

**(5)** No forfeiture liability shall be determined under this subsection against any person, if such person does not hold a license, permit, certificate, or other authorization issued by the Commission, and if such person is not an applicant for a license, permit, certificate, or other authorization issued by the Commission, unless, prior to the notice required by paragraph (3) of this subsection or the notice of apparent liability required by paragraph (4) of this subsection, such person (A) is sent a citation of the violation charged; (B) is given a reasonable opportunity for a personal interview with an official of the Commission, at the field office of the Commission which is nearest to such person's place of residence; and (C) subsequently engages in conduct of the type described in such citation. The provisions of this paragraph shall not apply, however, if the person involved is engaging in activities for which a license, permit, certificate, or other authorization is required, or is a cable television system operator, if the person involved is transmitting on frequencies assigned for use in a service in which individual station operation is authorized by rule pursuant to section 307(e) of this title, or in the case of violations of section 303(q) of this title, if the person involved is a nonlicensee tower owner who has previously received notice of the obligations imposed by section 303(q) of this title from the Commission or the permittee or licensee who uses that tower. Whenever the requirements of this paragraph are satisfied with respect to a particular person, such person shall not be entitled to receive any additional citation of the violation charged, with respect to any conduct of the type described in the citation sent under this paragraph.

**(6)** No forfeiture penalty shall be determined or imposed against any person under this subsection if—

**(A)** such person holds a broadcast station license issued under subchapter III of this chapter and if the violation charged occurred—

> **(i)** more than 1 year prior to the date of issuance of the required notice or notice of apparent liability; or

> **(ii)** prior to the date of commencement of the current term of such license,

> whichever is earlier; or

**(B)** such person does not hold a broadcast station license issued under subchapter III of this chapter and if the violation charged occurred more than 1 year prior to the date of issuance of the required notice or notice of apparent liability.

For purposes of this paragraph, "date of commencement of the current term of such license" means the date of commencement of the last term of license for which the licensee has been granted a license by the Commission. A separate license term shall not be deemed to have commenced as a result of continuing a license in effect under section 307(c) of this title pending decision on an application for renewal of the license.

47 U.S.C. § 504 provides:

## § 504. Forfeitures

### (a) Recovery

The forfeitures provided for in this chapter shall be payable into the Treasury of the United States, and shall be recoverable, except as otherwise provided with respect to a forfeiture penalty determined under section 503(b)(3) of this title, in a civil suit in the name of the United States brought in the district where the person or carrier has its principal operating office or in any district through which the line or system of the carrier runs: Provided, That any suit for the recovery of a forfeiture imposed pursuant to the provisions of this chapter shall be a trial de novo: Provided further, That in the case of forfeiture by a ship, said forfeiture may also be recoverable by way of libel in any district in which such ship shall arrive or depart. Such forfeitures shall be in addition to any other general or specific penalties provided in this chapter. It shall be the duty of the various United States attorneys, under the direction of the Attorney General of the United States, to prosecute for the recovery of forfeitures under this chapter. The costs and expenses of such prosecutions shall be paid from the appropriation for the expenses of the courts of the United States.

### (b) Remission and mitigation

The forfeitures imposed by subchapter II, parts II and III of subchapter III, and sections 503(b) and 507 of this title shall be subject to remission or mitigation by the Commission under such regulations and methods of ascertaining the facts as may seem to it advisable, and, if suit has been instituted, the Attorney General, upon request of the Commission, shall direct the discontinuance of any prosecution to recover such forfeitures: Provided, however, That no forfeiture shall be remitted or mitigated after determination by a court of competent jurisdiction.

**(c) Use of notice of apparent liability**

In any case where the Commission issues a notice of apparent liability looking toward the imposition of a forfeiture under this chapter, that fact shall not be used, in any other proceeding before the Commission, to the prejudice of the person to whom such notice was issued, unless (i) the forfeiture has been paid, or (ii) a court of competent jurisdiction has ordered payment of such forfeiture, and such order has become final.