IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

AT&T INC.,

*Petitioner*,

*v.*

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES OF AMERICA,

*Respondents.*

On Petition for Review from the
Federal Communications Commission

PETITIONER AT&T INC.'S OPPOSITION TO
RESPONDENTS' PETITION FOR REHEARING EN BANC

Pratik A. Shah
Z.W. Julius Chen
Margaret O. Rusconi
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
pshah@akingump.com

*Counsel for Petitioner AT&T Inc.*

## AMENDED CERTIFICATE OF INTERESTED PERSONS

No. 24-60223, *AT&T Inc. v. Federal Communications Commission*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

**Petitioner**
AT&T Inc.

**Counsel for Petitioner**
Pratik A. Shah
Z.W. Julius Chen
Margaret O. Rusconi
AKIN GUMP STRAUSS HAUER & FELD LLP

**Respondents**
Federal Communications Commission
United States of America

**Counsel for Respondents**
D. Adam Candeub
Jacob M. Lewis
Sarah E. Citrin
James Michael Carr
Adam L. Sorensen
FEDERAL COMMUNICATIONS
COMMISSION

Pamela Bondi
Abigail A. Slater
Robert J. Wiggers
Robert B. Nicholson
Matthew A. Waring
U.S. DEPARTMENT OF JUSTICE


*/s Pratik A. Shah*
Pratik A. Shah

*Counsel for Petitioner AT&T Inc.*

## TABLE OF CONTENTS

AMENDED CERTIFICATE OF INTERESTED PERSONS....................................i

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................3

REHEARING EN BANC SHOULD BE DENIED....................................................7

    A.    The Panel Correctly Held That A Potential Collection Action, Initiated In DOJ's Sole Discretion After The Commission Imposes A Civil Penalty, Is Inadequate Under *Jarkesy* ........................8

        *1.*    *Respondents' newly cited authorities cannot overcome* Jarkesy*'s requirement of a jury trial in an "initial adjudication."* ................................................................8

        *2.*    *The Supreme Court's intervening decision in* McLaughlin *reinforces the constitutional violation and does not change the result in this case.* ..................................11

    B.    *Jarkesy* Forecloses Respondents' Critiques Of The Panel's "Public Rights" Analysis ....................................................13

CONCLUSION ...............................................................................................17

# TABLE OF AUTHORITIES

<u>C</u><small>ASES</small>:

*Action for Children's Television v. FCC*,
    59 F.3d 1249 (D.C. Cir. 1995).............................................................11

*Axalta Coating Sys. LLC v. FAA*,
    --- F.4th ---, 2025 WL 1934352 (3d Cir. 2025)...........................15, 16

*Capital Traction Co. v. Hof*,
    174 U.S. 1 (1899)..................................................................................9

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ...............................................................1
    51 F.4th 644 (5th Cir. 2022) ...............................................................1

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    145 S. Ct. 2006 (2025)..................................................................*passim*

*SEC v. Jarkesy*,
    603 U.S. 109 (2024)......................................................................*passim*

*Sun Valley Orchards, LLC v. U.S. Dep't of Lab.*,
    --- F.4th ---, 2025 WL 2112927 (3d Cir. 2025).................................16

*United States v. Stevens*,
    691 F.3d 620 (5th Cir. 2012) ..................................................6, 12, 13

*Woods v. Holy Cross Hosp.*,
    591 F.2d 1164 (5th Cir. 1979) .............................................................9

<u>S</u><small>TATUTES</small>:

28 U.S.C.
    § 2342(1)...............................................................................................4
    § 2462..................................................................................................4

47 U.S.C.

    § 222(c) .................................................................................................. 3

    § 222(h)(1)(A) ...................................................................................... 3

    § 503(b)(2)(E) ..................................................................................... 10

    § 503(b)(3)(A) ...................................................................................... 3

    § 504(a) ............................................................................................. 4, 8

**OTHER AUTHORITIES:**

47 C.F.R. § 64.2010(a) ..................................................................... 3, 15

**INTRODUCTION**

This case arises out of an agency adjudication, which culminated in the Federal Communications Commission levying a $57 million fine against AT&T for alleged failures to reasonably protect certain customer location information. Without dissent, a panel of this Court agreed that the Commission's enforcement procedures violate AT&T's Seventh Amendment right to a jury trial and its right to adjudication by an Article III court. As the panel underscored, a straightforward application of the Supreme Court's decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024)—which affirmed this Court's judgment in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *reh'g denied*, 51 F.4th 644 (5th Cir. 2022)—dictates that result.

Despite seeking en banc review, Respondents do not challenge the panel's determinations that the multi-million-dollar fine is a civil penalty intended to punish AT&T or that the agency enforcement action assessed the reasonableness of AT&T's actions akin to common law negligence. Under *Jarkesy*, that means the Seventh Amendment jury-trial right applies and the enforcement action presumptively concerns private rights that must be adjudicated in an Article III court.

Faced with that reality, Respondents try another tack. Before the panel, Respondents cited no authority for the proposition that the availability of a post-forfeiture order jury trial in an Article III court satisfies constitutional scrutiny. Respondents nevertheless fault the panel for creating a conflict with a 126-year-old

Supreme Court case (among other never-before-cited authorities). But what *Jarkesy* states, in plain language that Respondents continue to ignore, is that a defendant is entitled to a jury in the "initial adjudication." 603 U.S. at 128. It is therefore not enough that a jury trial might be available *after* the Commission has already found the facts, interpreted the law, adjudged guilt, and levied punishment. That is especially true here, where the only Article III proceeding in which a jury trial is available would be a collection action that is solely up to the *government* to initiate (or not). Meanwhile, AT&T is left to face significant negative consequences unless the Commission's adjudication is overturned.

Respondents also claim that the Supreme Court's recent decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), supports rehearing. But that case cuts against Respondents by calling out the government's "empty promise" of judicial review. In any event, the two paragraphs of the panel's decision that Respondents say *McLaughlin* disturbs provide an alternative rationale only—one that (in the panel's words) "put[s] all th[e] [other constitutional infirmities] aside for a moment." Hence, *McLaughlin* (whatever its effect) cannot change the ultimate outcome.

Finally, Respondents invoke the "public rights" exception, arguing that the Commission should be permitted to impose a civil penalty on common carriers like AT&T simply because they are spectrum licensees. Such a broad conception of what

constitutes a "public right" would allow the exception to swallow the rule of Article III adjudication.  The panel instead followed *Jarkesy*'s directive to ground a "public rights" exception in history and found that courts routinely adjudicated negligence claims for money damages against common carriers, whereas federal agencies did not.  The panel thus had ample reason to reject Respondents' invitation to declare new "public rights" in this case.

At bottom, the Supreme Court in *Jarkesy* laid the groundwork for the panel's decision, and even the dissenters there predicted that *Jarkesy* would compel results like the one reached here.  Respondents do not meet the high standard for rehearing en banc and their petition should be denied.

## BACKGROUND

**1.**  Section 222 of the Telecommunications Act requires telecommunications carriers to protect the confidentiality of "customer proprietary network information" ("CPNI").  47 U.S.C. § 222(c); *see id.* § 222(h)(1)(A).  As relevant here, carriers "must take reasonable measures to discover and protect against attempts to gain unauthorized access to CPNI."  47 C.F.R. § 64.2010(a).

"The Commission assesses forfeiture penalties for violations of the Act, including violations of section 222."  Op. 3 (citing 47 U.S.C. § 503(b)(3)(A)).  Although the Commission has the option to designate an administrative law judge to adjudicate an alleged violation, the Commission rarely does so.  *Id.*; *see* 47 U.S.C.

§ 503(b)(3)(A) (leaving choice to Commission's "discretion"). Instead, the Commission itself conducts the adjudication by issuing a charging document called a notice of apparent liability ("NAL"). Op. 3. The subject of the NAL is not afforded a trial or hearing; it may only file a single written response. Op. 4. The Commission then decides whether to affirm its own NAL. If the Commission affirms—as it almost always does—it issues a forfeiture order. *Id.*

To challenge a forfeiture order, a carrier like AT&T can take one of two paths: (i) timely pay the penalty and seek review in the court of appeals under the Hobbs Act, 28 U.S.C. § 2342(1); or (ii) fail to pay the penalty and wait to see whether the Department of Justice ("DOJ") brings a collection action in district court within five years, *see* 47 U.S.C. § 504(a); 28 U.S.C. § 2462. *See* Op. 4-5.

**2.** In 2020, the Commission issued an NAL against AT&T (in parallel with other major carriers) for allegedly violating section 222. Specifically, the Commission contended that AT&T acted unreasonably in protecting customer location information used to facilitate location-based services like Life Alert or AAA roadside assistance. In the Commission's view, AT&T should have terminated *every* location-based service providers' access to customer location information within 30 days of learning of one bad actor's misdeeds, no matter the essential (sometimes life-saving) services provided or the harms to customers that an abrupt termination would

inflict.  *See* Op. 5-7.  The total proposed penalty for AT&T amounted to $57 million. Op. 7.

In response, AT&T argued that (i) "the Commission's enforcement regime is unconstitutional under Article III, the Seventh Amendment, and the nondelegation doctrine"; (ii) the customer location information at issue is not CPNI; (iii) AT&T acted reasonably; and (iv) the forfeiture amount was arbitrary, capricious, and exceeded the $2 million statutory penalty cap.  Op. 7.

In 2024, "the Commission rejected all of AT&T's arguments," "affirmed the proposed $57 million penalty," and "issued a forfeiture order demanding AT&T pay *** within 30 days."  Op. 7.  Rather than defy the forfeiture order and wait to see whether DOJ would bring a collection action, "AT&T elected to timely pay the penalty and seek review in [this] [C]ourt," raising the same four arguments it raised before the Commission.  Op. 8.

**3.**  A panel of this Court vacated the Commission's order, concluding that, under *Jarkesy*, the Commission's "in-house adjudication violated the Constitution by denying [AT&T] an Article III decisionmaker and a jury trial."  Op. 1-2.[1]

As a threshold matter, the panel held that the enforcement proceeding against AT&T was a "suit at common law"—both because the $57 million forfeiture is a

---

[1] The panel's decision did not reach the remaining three issues.  Judge Haynes concurred in the judgment only, but did not write separately.

"civil penalt[y] *** that could only be enforced in courts of law" and because the alleged violation of section 222 for lack of reasonableness "is analogous to common law negligence." Op. 8-13. The panel then rejected Respondents' argument that the section 222 action was a matter historically adjudicated outside of Article III courts and thus subject to the "public rights" exception for agency adjudication. Op. 13-18.

Having decided that Seventh Amendment and Article III rights apply, the panel turned to whether the Commission's forfeiture scheme is constitutionally sufficient. The panel held that it is not. While acknowledging that the Commission's forfeiture scheme carries the "possibility of a back-end [collection action] trial," the panel reasoned that "by the time DOJ sues (if it does), the Commission would have already adjudged a carrier guilty *** and levied fines"—resulting in "real-world impacts on carriers." Op. 18. "The Commission cite[d] no authority," the panel observed, "supporting the proposition that the constitutional guarantee of a jury trial is honored" by such a scheme. Op. 19.

"[P]ut[ting] all that aside for a moment," the panel then "considered another glaring problem": Under *United States v. Stevens*, a district court in a DOJ-initiated collection action could "'consider[] the factual basis for the agency action' but not [a carrier's] 'legal arguments.'" Op. 19 (quoting 691 F.3d 620, 622 (5th Cir. 2012)). Thus, if AT&T wanted "a jury trial, it ha[d] to defy a multi-million dollar penalty,

wait for DOJ to sue, and, even then, relinquish its ability to challenge the order's legality." Op. 20. Such a process, the panel concluded, could not satisfy AT&T's constitutional rights.

## REHEARING EN BANC SHOULD BE DENIED

Rehearing en banc is not warranted in this case, which concerns a straightforward application of *Jarkesy* to the Commission's imposition of a $57 million civil penalty against AT&T *without* a jury trial before an Article III decisionmaker. As the panel explained (without dissent), on the "threshold question" of "whether the Commission's enforcement proceeding qualifies as a 'suit at common law'" under the Seventh Amendment, it "is all but dispositive" that, "like the penalties in *Jarkesy*, the civil penalties here are 'a type of remedy at common law that could only be enforced in courts of law.'" Op. 9-10 (quoting 603 U.S. at 123, 125). Confirming as much, the Commission's enforcement of section 222 is keyed "entirely" to "the reasonableness of [AT&T's] actions" and is therefore "analogous to common law negligence" claims that trigger Seventh Amendment and Article III rights. Op. 10-13; *see also* Op. 14-18.

Respondents continue to "[s]ay[] nothing about the remedy," Op. 10, which "effectively decides that this suit implicates the Seventh Amendment," *Jarkesy*, 603 U.S. at 125. And their petition does not deny that the Commission's assessment came down to "reasonableness." Op. 10-11. Instead, Respondents contend that the

panel should have: (i) held that the *potential* availability of a jury trial *after* a forfeiture order issues satisfies the Seventh Amendment; and (ii) determined that the Commission's common law negligence-type action against AT&T concerned "public rights" that need not be adjudicated in an Article III court with a jury. The panel considered and appropriately rejected both arguments under *Jarkesy*. There is no reason for the en banc Court to revisit those issues.

## A. The Panel Correctly Held That A Potential Collection Action, Initiated In DOJ's Sole Discretion After The Commission Imposes A Civil Penalty, Is Inadequate Under *Jarkesy*

### 1. *Respondents' newly cited authorities cannot overcome* Jarkesy*'s requirement of a jury trial in an "initial adjudication."*

Respondents first argue that en banc review is warranted to correct the panel's supposed "fail[ure] to account for the availability of a de novo jury trial in *** forfeiture proceedings." Pet. 9. The panel did no such thing. It just "disagree[d]" that the proffered jury trial would "give a carrier everything promised by the Seventh Amendment and Article III." Op. 18.

As the panel explained—and Respondents do not dispute—no provision of the Communications Act actually makes a federal court jury trial "availab[le]" to a carrier like AT&T. Instead, there is only the "possibility" that "a carrier who fails to timely pay a forfeiture penalty may be sued by DOJ in federal district court." Op. 18 (citing 47 U.S.C. § 504(a)). As a result, "by the time DOJ sues (if it does), the Commission would have already adjudged a carrier guilty of violating section 222

8

and levied fines." *Id.* That is unconstitutional under *Jarkesy*, which requires the "initial adjudication" to be before a neutral judge and jury. 603 U.S. at 127-128 (Suits "in the nature of an action at common law" require "involvement by an Article III court," and "a jury if the Seventh Amendment applies[,] *** in the initial adjudication.").

Despite "cit[ing] no authority supporting the proposition that the constitutional guarantee of a jury trial is honored by a trial occurring after an agency has already found the facts, interpreted the law, adjudged guilt, and levied punishment," Op. 19, Respondents now claim that the panel's reasoning "conflicts with decisions of this Court and the Supreme Court holding that the Seventh Amendment can be satisfied by a jury following an initial determination by another tribunal." Pet. 9. To the extent those cases can be read to stand for that proposition, the Supreme Court's far more recent pronouncement in *Jarkesy* states otherwise.

Regardless, those (newly cited) cases do not help Respondents. In those instances, the aggrieved party had immediate, unfettered access to a trial by jury in an Article III court. *See, e.g.*, *Capital Traction Co. v. Hof*, 174 U.S. 1, 4 (1899) (jury trial was available "at the request of either party"); *Woods v. Holy Cross Hosp.*, 591 F.2d 1164, 1178-1179 (5th Cir. 1979) (acknowledging "right to have *** claim fully and finally determined by a jury"). That is a far cry from the situation here, as DOJ might *never* bring a collection action if a carrier fails to pay, thus leaving parties like

AT&T with no prospect of a jury trial.  It is no answer to suggest that a carrier could affirmatively bring a declaratory action in district court to challenge a forfeiture order.  *Contra* Pet. 12.  The Hobbs Act bars such collateral attacks on Commission orders.  *See McLaughlin*, 145 S. Ct. at 2017-2018.

Rather than recognize the implications of a system in which the availability of constitutional rights hinges on the *government*'s unilateral decision to afford them, Respondents appear to take the position that the Seventh Amendment does not attach to the Commission's issuance of a forfeiture order.  In their view, that is because the Commission may provide an "initial determination that [a carrier] violated the statute and should pay penalty," but only a "court" can "order[] payment."  Pet. 9-10.  As the panel stressed, however, the Commission's "forfeiture orders *** are not mere suggestions."  Op. 18.  That much is clear on the face of the order in this case, which "demand[ed] AT&T pay the $57 million penalty within 30 days."  Op. 7; *see* AR1:36-37 ("**IT IS ORDERED**" that AT&T "**IS LIABLE FOR A MONETARY FORFEITURE** in the amount of *** $57,265,625[.] *** Payment of the forfeiture shall be made in the manner provided for in section 1.80 of the Commission's rules within thirty (30) calendar days[.]").

The "real-world impacts on carriers" remove any doubt.  Op. 18.  Notably, "the Commission must consider any history of prior adjudicated offenses in imposing future penalties."  *Id.* (citing 47 U.S.C. § 503(b)(2)(E)).  Respondents have

yet to deny that a "prior adjudicated offense" includes the factual findings underlying *unreviewed* forfeiture orders. *See, e.g.*, *Action for Children's Television v. FCC*, 59 F.3d 1249, 1265 (D.C. Cir. 1995) (Tatel, J., dissenting) ("[T]he Commission relies on its unreviewed \*\*\* determinations to impose increased penalties," and in "several instances \*\*\* has doubled and tripled forfeitures[.]"). It thus blinks reality for Respondents to insist that forfeiture proceedings are not at least "initial adjudication[s]" governed by *Jarkesy*.

Respondents also give short shrift to "[t]he panel's concerns about 'reputational harm' or unnamed 'risks' while parties await trial," because those harms and risks are not themselves Seventh-Amendment-triggering "monetary penalties." Pet. 11 (quoting Op. 18-19). That misses the point: Those consequences confirm the conclusion that the $57 million penalty, premised on an agency declaration of a statutory violation, cannot be downplayed as a mere Commission recommendation.

> 2. *The Supreme Court's intervening decision in* McLaughlin *reinforces the constitutional violation and does not change the result in this case.*

The Supreme Court's *McLaughlin* decision, issued after the panel decided this case, hurts Respondents' bid for rehearing more than helps it. *McLaughlin* held that when district courts determine liability in civil enforcement proceedings, they can independently assess whether the Commission's interpretation of a statute is correct.

*See* 145 S. Ct. at 2013. But in reaching that conclusion—which the government resisted—the Supreme Court rejected the argument that district courts may enter declaratory judgments regarding the validity of Commission orders, *see* p. 10, *supra*, and dismissed the government's "empty promise" of judicial review, 145 S. Ct. at 2021. As to the latter point, the Court there considered the government's suggestion that if a party were barred from seeking district court review of the Commission's legal determination, the party could simply petition the Commission for a new rulemaking order and thereafter appeal. The Court was troubled by the fact that "judicial review may not always be available under that route, or it may take many years for the agency to act on a petition for a new rulemaking"—rendering "the Government's suggestion of an alternative path of judicial review *** largely illusory in practice." *Id.* at 2021-2022. That perfectly describes Respondents' reliance on the supposed "availability" of a jury trial in collection actions that DOJ *might* bring in district courts years later. *See* pp. 8-10, *supra*.

In any event, *McLaughlin* does not obviate the constitutional violation in this case. As Respondents see things, *McLaughlin* "effectively abrogates *Stevens*"—in which this Court held that district court review must be limited to "factual defenses"—and compels rehearing to address the panel's *Stevens*-based observation that AT&T would be forced to give up challenges to the legal validity of the forfeiture

order had it waited for DOJ to bring a collection action in district court.  Pet. 16-17 (quoting 691 F.3d at 622).

The problem for Respondents is that *Stevens*—binding circuit precedent when AT&T made the decision to pay and seek immediate judicial review—is in no way necessary to the panel's holding.  By the time the panel discussed *Stevens*, it had already "reject[ed] the Commission's argument that" its "completely in-house" enforcement process "satisfies Article III and the Seventh Amendment."  Op. 18-19. The panel then "put all that aside for a moment" to "consider *another* glaring problem"—*i.e.*, the one presented by *Stevens*.   Op. 19 (emphasis added). Accordingly, whatever *McLaughlin*'s impact on *Stevens*, there is no reason to grant rehearing en banc and vacate the entire panel opinion in view of a two-paragraph secondary rationale (that the panel can easily excise if it sees fit).

## B. *Jarkesy* Forecloses Respondents' Critiques Of The Panel's "Public Rights" Analysis

Respondents' invocation of the "public rights" exception likewise runs headlong into *Jarkesy* and provides no basis for en banc review.  As the panel explained, "[s]uits at common law"—like the Commission's negligence-type claim against AT&T—"presumptively concern 'private rights' and must be adjudicated by Article III courts."  Op. 13 (quoting *Jarkesy*, 603 U.S. at 127).  The "narrow exception" for "public rights" is reserved for "'historic categories of adjudications' occurring outside of Article III," such as "revenue collection, foreign commerce,

immigration, tariffs, tribal relations, public lands, public benefits, and patents." *Id.* (quoting 603 U.S. at 128-131). No "public rights" history exists for "negligence action[s] against a common carrier for money damages" that "have been routinely adjudicated in state and federal courts." Op. 15-16.

Respondents assert that "the panel fail[ed] to address AT&T's role as a spectrum licensee." Pet. 13. On the contrary, that was the focus of the panel's analysis. *See* Op. 14 (framing issue around "[t]he Commission['s] argu[ment] [that] its enforcement action falls within the public rights exception because it involves common carriers" that "are affected with a public interest") (internal quotation marks omitted). While Respondents emphasize AT&T's "public character," Pet. 12-13, the panel held that such loose reasoning "would blow a hole in what is meant to be a narrow exception to Article III," because the mere fact of common-carrier status "would empower Congress to bypass Article III adjudication in countless matters," Op. 14-15. While Respondents claim that "the exception should apply to enforcement actions, like this one," that concern "the granting of public benefits," Pet. 13, the panel countered that this enforcement action was properly viewed "like a negligence action against a common carrier for money damages," Op. 16. And while Respondents contend that the historical adjudication of such actions in courts and the concomitant lack of agency adjudication is "irrelevant," Pet. 13-14, the panel

explained that *Jarkesy* looks to "historic categories of adjudications" to draw the line between private and public rights, Op. 13 (quoting 603 U.S. at 130).

In the end, Respondents cannot turn a common law negligence-type claim for money damages—which even the first modern administrative agency did not believe it could pursue in-house, *see* Op. 17—into one involving "technical prescriptions," Pet. 13-14 (quoting *Axalta Coating Sys. LLC v. FAA*, --- F.4th ---, 2025 WL 1934352, at *5 (3d Cir. 2025)). *Axalta* itself proves the point. In that case, the Third Circuit held the public rights exception applies to agency-adjudicated violations of hazardous material regulations that require, for example, packaging to "be capable of withstanding without leakage the greater of *** [a]n internal pressure which produces a gauge pressure of not less than 75kPa (11 psig) for liquids in Packing Group III of Class 3 or Division 6.1." 2025 WL 1934352, at *5 (ellipsis and alteration in original). Those standards did not "descend *** from the common law" and could be applied "without any resort to common law concepts." *Id.*

The opposite is true here. Carriers like AT&T are simply required, without further prescription (technical or otherwise), to take "reasonable measures." 47 C.F.R. § 64.2010(a). An alleged failure to take undefined "reasonable measures"— here, relating solely to whether AT&T should have instituted even greater controls on the use of customer location information or acted even more quickly to cut off access, *see* Op. 10-11—is a claim well known to the common law, not a "matter[]

'determined exclusively by [the executive and legislative] branches.'" Pet. 14 (second alteration in original) (quoting *Jarkesy*, 60 U.S. at 128). Indeed, after Respondents filed their petition, the Third Circuit distinguished *Axalta* on that ground. *See Sun Valley Orchards, LLC v. U.S. Dep't of Lab.*, --- F.4th ---, 2025 WL 2112927, at *5 & n.4 (3d Cir. 2025) (holding that, notwithstanding the existence of a federal regulation requiring employers to provide certain benefits to temporary foreign workers, the agency enforcement action was "litigated like a suit for breach of contract, which would have traditionally been heard in common law courts").

No doubt, the Commission regulates carriers like AT&T. But the fact that "federal agencies like the Commission have long had regulatory authority over common carriers, such as when setting rates or granting licenses, *** does not imply, as the Commission seems to think, that any regulatory action concerning common carriers implicates the public rights exception." Op. 16; *cf. Sun Valley Orchards*, 2025 WL 2112927, at *7 (holding that "President's unique power over foreign affairs *** at best *** shows that *some* [immigration] actions may proceed in agency tribunals"). As *Jarkesy* makes crystal clear, "traditional legal claims" cannot be "siphon[ed] *** away from an Article III court" simply because they "originate[d] in a newly fashioned regulatory scheme." 603 U.S. at 135 (second alteration in original). To the contrary, the Seventh Amendment applies even "to novel statutory regimes, so long as the claims are akin to common law claims." *Id.* at 139.

<center>***</center>

In holding that the Constitution precludes the imposition of civil penalties for regulatory violations that are analogous to common law actions traditionally adjudicated by courts, *Jarkesy* requires certain federal agencies to alter their enforcement practices.  But that conclusion did not precipitate this Court's en banc review even in *Jarkesy* itself.  With the Supreme Court's affirmance, there is even less reason to revisit the panel's straightforward application of *Jarkesy* in this case— particularly when the dissenting justices recognized the impending doom of various regulatory schemes, including the Commission's.  *See* 603 U.S. at 200-201 (Sotomayor, J., dissenting).

## CONCLUSION

This Court should deny Respondents' petition for rehearing en banc.

<div align="right">

Respectfully submitted,

</div>

August 14, 2025

<div align="right" style="float:right">

*s/Pratik A. Shah*
Pratik A. Shah
Z.W. Julius Chen
Margaret O. Rusconi
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288
pshah@akingump.com

*Counsel for Petitioner AT&T Inc.*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2025, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.


*s/ Pratik A. Shah*
Pratik A. Shah

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 40(d)(4) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,899 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Times New Roman font.

*s/Pratik A. Shah*
Pratik A. Shah


August 14, 2025